IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE CARRANZA,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>G. LEWIS, et al.,<br><br>　　　　　Defendants. / | No. C 13-3337 YGR (PR)<br><br>**ORDER OF PARTIAL DISMISSAL AND SERVICE** |

## INTRODUCTION

Plaintiff, a state prisoner currently incarcerated at Pelican Bay State Prison ("PBSP"), filed a *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Thereafter, he filed an amended complaint. Dkt. 15. He then filed another document labeled, "First Amended Complaint." Dkt. 18. He has also filed two motions for an extension of time to serve Defendants. Dkt. 19, 20.

His motion for leave to proceed *in forma pauperis* ("IFP") has been granted.

Venue is proper because the events giving rise to some of the claims are alleged to have occurred at PBSP, which is located in this judicial district. *See* 28 U.S.C. § 1391(b).

As mentioned above, pending before the Court is Plaintiff's "First Amended Complaint" (dkt. 18), which the Court construes as the operative pleading herein. *See London v. Coopers & Lybrand*, 644 F.2d 811, 814 (9th Cir. 1981) (holding amended complaint supersedes initial complaint and may not incorporate by reference any parts of original complaint). The Court also construes Plaintiff's filing another amended complaint as his implied motion for leave to file a Second Amended Complaint ("SAC"). A plaintiff may amend his complaint once as a matter of course at any time before a responsive pleading is served. *See* Fed. R. Civ. P. 15(a). The Court notes that Defendants in this action have not been served at this time. Plaintiff may as a matter of course amend his complaint because a responsive pleading has not yet been served. *See* Fed. R. Civ. P. 15(a). While Plaintiff has previously filed an amended complaint (dkt. 15), the Court finds that it is in the interest of justice to allow Plaintiff to amend his complaint a second time. *See*

*Janicki Logging Co. v. Mateer*, 42 F.3d 561, 566 (9th Cir. 1994) (Federal Rule of Civil Procedure 15(a) is to be applied liberally in favor of amendments and, in general, leave shall be freely given when justice so requires.). Accordingly, Plaintiff's implied motion for leave to file a SAC is GRANTED. The Clerk of the Court is directed to file the document labeled "First Amended Complaint," (dkt. 18), and docket it as Plaintiff's "Second Amended Complaint." The Clerk is further directed to mark the SAC as filed on March 21, 2014, the date it was received by the Court.

In his SAC, Plaintiff challenges his original July 28, 2009 placement and his resulting retention in administrative segregation on an "indeterminate" status in the secure housing unit ("SHU") on the basis of his alleged association with the Mexican Mafia ("EME") prison gang. Plaintiff denies that he is a gang associate, and he alleges multiple violations of the federal and state constitutions stemming from his placement and retention in the SHU. Plaintiff names numerous Defendants from PBSP in Crescent City, the California Department of Corrections and Rehabilitation ("CDCR") in Sacramento, as well as Corcoran State Prison ("CSP") in Corcoran.

Plaintiff is serving a prison term of twenty-seven years to life with the possibility of parole. Dkt. 18 at 29.[1] As mentioned above, he has been housed continuously in various SHU units on an "indeterminate" status due to his alleged gang association since 2009, and he has been incarcerated in the SHU at PBSP since 2010 -- a total of four-years.[2] According to CDCR policy and practice, this means that Plaintiff will be released from the SHU only if he debriefs or provides information incriminating other prisoners. Plaintiff argues that under this policy he will never be released from the SHU because he is unable to debrief because he is *not* a gang associate, and he has no inculpatory evidence to provide prison officials. Specifically, Plaintiff alleges the following claims:

(1) a violation of his Fourteenth Amendment due process rights based upon Defendants' placement of Plaintiff in long-term administrative segregation in the SHU without a fair hearing and Defendants' failure to act and investigate Plaintiff's claim that he is not a prison gang associate;

(2) a violation of his Eighth Amendment right to be free of cruel and unusual punishment based on Plaintiff's erroneous classification as a gang associate and placement in the SHU at PBSP;

---

[1] Page number citations refer to those assigned by the Court's electronic case management filing system and not those assigned by Plaintiff.

[2] As of March 12, 2014, Plaintiff claims that he has been retained in the SHU at PBSP for four years. Dkt. 18 at 32. Prior to that, he was retained at the SHU at CSP until he was transferred to PBSP on January 14, 2010. *Id.* at 19.

2

(3) a violation of his Eighth Amendment right to be free of cruel and unusual punishment based on Defendants' failure to act and investigate Plaintiff's claim that he is not a prison gang associate;

(4) a violation of his Fifth Amendment due process right against self-incrimination based on Defendants' requirement that Plaintiff becomes an informant about gang activities in order to be released from the SHU;

(5) a violation of the terms of the settlement agreement in *Castillo v. Alameida*, No. 94-2847 MJJ (PR) (N.D. Cal.), based on Defendants' placement of Plaintiff in long-term administrative segregation in the SHU on the basis of evidence that is unreliable and insufficient;

(6) a violation of his state-created liberty interest in release from the SHU;

(7) a violation of his Fifth Amendment due process right by Defendants promulgating, enforcing and implementing prison rules and regulations that are vague and overbroad;

(8) a violation of his First Amendment right of association on the ground that Plaintiff's indefinite confinement in the SHU prevents him from associating with other prisoners;

(9&10) violations of various provisions of California constitutional and statutory law;

(11) a violation of his rights due to certain Defendants' failures, in their supervisory capacity, to establish lawful polices and procedures and to train their subordinate employees properly;

(12) a violation of his Eighth Amendment right to be free from cruel and unusual punishment on the ground that Defendants' requirement that Plaintiff debrief and become an informant exposes him to a substantial risk of death or serious bodily injury; and

(13) a violation of his Fourteenth Amendment right to equal protection based upon Defendants' intentional discrimination against him on the basis of his racial group.

Dkt. 18 at 44-58. Plaintiff seeks injunctive relief and monetary damages.

## **DISCUSSION**

### **I.  Standard of Review**

A federal court must engage in a preliminary screening of any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). The court must identify any cognizable claims, and dismiss any claims which are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. §1915A(b)(1),(2).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the violation was committed by a person acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

## II. Legal Claims

### A. Due Process Violations and Supervisory Liability - Claims (1), (3), (6), (11)

#### 1. Placement and Retention in the SHU

The decision to place and retain a prisoner in administrative segregation must comport with procedural due process only if the specific deprivation at play constitutes "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). Plaintiff's deprivation here -- a prolonged term of segregation in the SHU at PBSP -- suggests sufficient severity to implicate procedural due process protection. Assuming that this is the case, the Ninth Circuit has held that Plaintiff was entitled to the following procedures before placement in the SHU: (1) an informal non-adversary hearing within a reasonable time after being segregated, (2) notice of the charges or the reasons segregation is being considered, and (3) an opportunity to present his views. *See Toussaint v. McCarthy*, 801 F.2d 1080, 1100 (9th Cir 1986). There also must be "some evidence" to support the decision to segregate plaintiff for administrative reasons, *id.* at 1104-04 (citing *Superintendent v. Hill*, 472 U.S. 445, 455 (1985)), and the evidence relied upon must have "some indicia of reliability," *Madrid v. Gomez*, 889 F. Supp. 1146, 1273-74 (N.D. Cal. 1995).

In view of the following, the allegations in the SAC regarding Defendants' placement of Plaintiff and his resulting "indeterminate" retention in administrative segregation in the SHU at PBSP without a fair hearing and Defendants' failure to act and investigate Plaintiff's claim that he is not a prison gang associate, when liberally construed, state cognizable claims under section 1983 for a denial of due process and for supervisory liability -- claims (1), (3) and (11) -- against the following Defendants at PBSP: Warden G. Lewis; Chief Deputy Warden ("CDW") P. T. Smith; Facility Captain K. Cruse; Sergeant R. Randow; Institutional Gang Investigation ("IGI") Sergeant A. B. Gomez; and Licensed Clinical Social Worker V. Cappello. Plaintiff also states the same due process and supervisory liability claims against the following Defendants at CDCR in Sacramento: Director Matthew Cate; Appeals Examiner K. J. Allen; Inmate Appeals Branch Chiefs R. Manuel and D. Foston; Special Services Unit Special Agents B. Kinroton, D. S. McClure, Buechner, Scott S. Kissel and C. M. Rojers. But the following named CSP officials are dismissed because there is

no causal connection between them and the alleged wrongdoing at PBSP: Warden Connie Gipson; CDWs R. Davis, K. Comaites and R. Lopez; Facility Captain R. Bloomfield; Correctional Counselors T. Cisneros, F. Chastain and E. E. Hough; Investigative Service Unit Investigative Captain R. Flores; IGI Officers J. Campbell and Mayo; and IGI Lieutenant C. Rodriguez.[3] *See Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988) (A person deprives another of a constitutional right within the meaning of section 1983 if he does an affirmative act, participates in another's affirmative act or omits to perform an act which he is legally required to do, that causes the deprivation of which the plaintiff complains.); *see also Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (supervisor liability under section 1983 requires personal involvement in constitutional deprivation or sufficient causal connection between supervisor's wrongful conduct and constitutional deprivation).

### 2. State-Created Liberty Interest In Parole

Plaintiff alleges in claim (6) that he has a due process state-created liberty interest in release on parole and that this interest has been violated by Defendants' use of unreliable gang labels and indeterminate SHU status to impose a blanket no parole policy on prisoners (like himself).

While there is "no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence," *Greenholtz v. Inmates of Nebraska Penal & Corr. Complex*, 442 U.S. 1, 7 (1979), a State's statutory parole scheme, if it uses mandatory language, may create a presumption that parole release will be granted when or unless certain designated findings are made, and thereby give rise to a constitutionally protected liberty interest. *See Board of Pardons v. Allen*, 482 U.S. 369, 376-78 (1987); *Greenholtz*, 442 U.S. at 11-12. In such a case, a prisoner gains a legitimate expectation in parole that cannot be denied without

---

[3] Plaintiff's claims attacking the conditions of his confinement against prison officials at CSP are more appropriately addressed in a separate civil rights complaint. Therefore, if Petitioner wishes to pursue such claims, he may do so by filing a new civil rights action accompanied by the requisite filing fee or an IFP application in the correct venue. Because CSP is located in Corcoran, California, which lies within the venue of the Eastern District of California, and Petitioner seeks immediate injunctive relief and damages from CSP prison officials for various conditions of his confinement, it is in the interests of justice and convenience of the parties for these claims to be pursued in the United States District Court for the Eastern District of California. Therefore, Petitioner may file a civil rights action in that venue if he wishes to pursue such claims.

adequate procedural due process protections. *See Allen*, 482 U.S. at 373-81; *Greenholtz*, 442 U.S. at 11-16. "The liberty interest is created, not upon the grant of a parole date, but upon the incarceration of the inmate." *Biggs v. Terhune*, 334 F.3d 910, 915-16 (9th Cir. 2003) (finding initial refusal to set parole date for prisoner with fifteen-to-life sentence implicated prisoner's liberty interest). California's parole scheme, which uses mandatory language and is largely parallel to the schemes found in *Allen* and *Greenholtz*, gives rise to a protected liberty interest in release on parole. *McQuillion v. Duncan*, 306 F.3d 895, 902 (9th Cir. 2002).

Accordingly, Plaintiff's allegations present a constitutionally cognizable due process claim based on a denial of his state-created liberty interest in parole -- claim 6.

## B.    Eighth Amendment Violations - Claims (2), (3), (12)

The Eighth Amendment requires that prison officials take reasonable measures to guarantee the safety of prisoners. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994). In particular, prison officials have a duty to protect prisoners from violence at the hands of other prisoners. *See id.* at 833; *Hoptowit v. Ray*, 682 F.2d 1237, 1250 (9th Cir. 1982); *Gillespie v. Civiletti*, 629 F.2d 637, 642 & n.3 (9th Cir. 1980). A prisoner need not wait until he is actually assaulted to state a claim and obtain relief. *See Farmer*, 511 U.S. at 845; *Woodhous v. Virginia*, 487 F.2d 889, 890 (4th Cir. 1973); *Stickney v. List*, 519 F. Supp. 617, 620 (D. Nev. 1981). If the Court finds the Eighth Amendment's objective and subjective requirements satisfied, it may grant appropriate relief. *See Farmer*, 511 U.S. at 845-46; *Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986).

Plaintiff claims that his classification as a gang member and placement in the SHU at PBSP -- claim (2) -- as well as Defendants' alleged failure to act or investigate his claim that he is not a prison gang associate -- claim (3) -- constitute cruel and unusual punishment under the Eighth Amendment. However, it is well established that the Eighth Amendment's prohibition against cruel and unusual punishment is not violated by classification programs which pursue "important and laudable goals" and are instituted under the State's authority to operate correctional facilities. *See Neal v. Shimoda*, 131 F.3d 818, 833 (9th Cir. 1997) (classification program designed to treat and reduce recidivism of sex offenders is well within state's authority to operate correctional facilities and does not violate contemporary standards of decency). Nor does misclassification inflict pain so

as to be cruel and unusual punishment violative of the Eighth Amendment. *See Hoptowit v. Ray*, 682 F.2d 1237, 1255-56 (9th Cir. 1982); *Ramos v. Lamm*, 639 F.2d 559, 566-67 (10th Cir. 1980), *cert. denied*, 450 U.S. 1041 (1981). Accordingly, Plaintiff's Eighth Amendment claims related to his alleged erroneous classification as a gang associate and placement in the SHU at PBSP and Defendants' failure to investigate his claim that he is not a prison gang associate -- claims (2) and (3) -- are DISMISSED without leave to amend.

Plaintiff also alleges -- in claim (12) -- that the debriefing policy subjects him to cruel and unusual punishment in violation of the Eighth Amendment because it requires him to put himself, his families and friends at risk of physical attack in order to be released from the SHU. He further allege that there is no CDCR policy which can effectively protect inmates who have debriefed. Allegations that a prisoner will be placed in harm's way because of confidential information made known to other prisoners may state a cognizable claim for relief. *See e.g., Valandingham v. Bojorquez*, 866 F.2d 1135, 1138 (9th Cir. 1989) (deliberately spreading rumor that prisoner is snitch may state claim for violation of right to be protected from violence while in state custody). Although Plaintiff does not allege that prison officials provide information obtained during debriefing to other prisoners, the clear implication is that prison officials know that a prisoner's release from an indeterminate SHU term will be recognized by other prisoners as a response to debriefing, that is, snitching on other prisoners. The Court is unable to say at this time that such allegations fail to state a claim for relief. Accordingly, his Eighth Amendment claim on this ground may proceed.

**C.    Alleged Non-Compliance With *Castillo* Settlement Agreement - Claim (5)**

In claim (5), Plaintiff appears to claim that Defendants violated some provision in the settlement agreement in *Castillo v. Alameida*, N.D. Cal. No. 94-2847 MJJ, or did not comply with a state court order. The settlement agreement (the existence of which the Court can take judicial notice) does not provide a basis for a section 1983 claim for relief because it is not a determination that there was any constitutional violation in the active/inactive review process and, even if it did, a settlement agreement does not provide a right secured by the Constitution or laws of the United States, the violation of which is a necessary element of a section 1983 claim. As a practical matter,

7

the settlement agreement also does not aid Plaintiff because he was not a party to it.  Although the settlement agreement contemplates changes in the gang validation criteria, the settlement agreement itself acknowledges that it will take several months for those changes to be implemented.  Finally, to the extent that Plaintiff claims that prison officials did not comply with an order from the state court, he must apply to that state court for relief in that case.  A state court order does not provide a right secured by the Constitution or laws of the United States, the violation of which, as mentioned above, is a necessary element of a section 1983 claim.  Accordingly, this claim is DISMISSED.

### D. Fifth Amendment Violation - Claims (4) and (7)

#### 1. Right Against Self-Incrimination

Plaintiff argues in claim (4) that the debriefing requirement violates his Fifth Amendment right against self-incrimination.

The Fifth Amendment privileges an individual not to answer official questions put to him in any proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings.  *Baxter v. Palmigiano*, 425 U.S. 308, 316 (1976).  Answers implicating others which amount to a tacit admission of one's own complicity are protected by the Fifth Amendment as well.  *United States v. Safirstein*, 827 F.2d 1380, 1388 (9th Cir. 1987).  While the State may validly insist on answers to incriminating questions to enable it to sensibly administer its prison system, it may do so only if it recognizes that the required answers may not be used in a criminal proceeding and thus eliminates the threat of incrimination.  *See Minnesota v. Murphy*, 465 U.S. 420, 435 n.7 (1984); *see also Madison v. Lane*, 1986 WL 13205, *8 (N.D. Ill. 1986) (unless and until inmate granted use immunity he may constitutionally refuse to give testimony to prison officials).  An individual may not be punished by the State for having validly invoked the privilege against self-incrimination.  *See Lefkowitz v. Cunningham*, 431 U.S. 801, 805 (1977).

Plaintiff's allegations present a colorable Fifth Amendment claim.  Such is the case insofar as Plaintiff alleges that in order to debrief he must answer questions which might incriminate him in the future.  There is no indication that California has erected a privilege of confidentiality for prisoner statements which would eliminate the threat of future criminal prosecution on the basis of any admissions he might make in the debriefing process, and he is being punished for the valid

8

assertion of his Fifth Amendment rights by continued retention in the SHU which cannot be supported on other grounds. Accordingly, this claim is cognizable and may proceed.

### 2. Regulations Vague and Overbroad

In claim (7), Plaintiff contends that Defendants enforced vague and overbroad regulations related to gang validation, i.e., Title 15 of the California Code of Regulations § 3023. Section 3023 ("gang activity") does not stand in isolation, and instead must be read in combination with section 3000 (defining "gang"), and section 3378(c)(8) (criteria for source items used for gang identification) of Title 15 of the California Code of Regulations. Read together, the regulations are not overbroad or vague with regard to prohibited gang activity. Accordingly, Plaintiff's claim is DISMISSED.

### E. First Amendment Violation - Claim (8)

Plaintiff alleges that he has been placed and held in the SHU based solely on his association with members of the EME Prison Gang. In claim (8), he argues that this amounts to a violation of his First Amendment right to association. Specifically, he argues that no legitimate penological interest is served when the mere fact of "association" is transformed into a pretext for keeping prisoners indefinitely in the SHU and denying them any realistic opportunity to parole.

The First Amendment prohibits government officials from "abridging the freedom of speech . . . or the right of the people peaceably to assemble." U.S. Const. amend. I. Prisoners retain those First Amendment rights not inconsistent with their status as prisoners or with legitimate penological objectives of the corrections system. *See Pell v. Procunier*, 417 U.S. 817, 822 (1974). Although a prisoner does not lose all First Amendment protections when he enters prison, *id.*, the "inmate's 'status as a prisoner' and the operational realities of a prison dictate restrictions on the associational rights among inmates." *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 125-26 (1977). Prison regulations that infringe on a prisoner's First Amendment rights are valid so long as they are "reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987).

At this stage of the proceedings, the Court is unable to say that holding a prisoner in the SHU for four years based solely on his associational activities with gang members, and not on

1 illegal gang related activities, is reasonably related to legitimate penological interests. Accordingly,
2 this claim may proceed.

### F.   State Law Violations - Claims (9), (10)

Plaintiff alleges that Defendants' actions relating to his placement and retention in administrative segregation in the SHU in violation of his federal due process rights also violates various provisions of California constitutional and statutory law. The federal supplemental jurisdiction statute provides that "'district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.'" 28 U.S.C. § 1367(a).

Plaintiff asserts supplementary state law claims that the actions of Defendants violated the due process rights afforded to him by California constitutional and statutory law. Liberally construed, Plaintiff's allegations satisfy the statutory requirement. Accordingly, the Court will exercise supplemental jurisdiction over Plaintiff's state law claims - claims (9) and (10).

### G.   Equal Protection Violation - Claim (13)

Plaintiff alleges that he is treated differently from similarly situated SHU inmates solely because of his race. It seems that in claim (13) Plaintiff is claiming that Hispanic SHU inmates are subject to different housing restrictions than other inmates and are more frequently denied release from the SHU.

"Prisoners are protected under the Equal Protection Clause of the Fourteenth Amendment from invidious discrimination based on race." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974) (citation omitted). Invidious racial discrimination, which is unconstitutional outside prisons, is unconstitutional within prisons, save for the necessities of prison security and discipline. *Cruz v. Beto*, 405 U.S. 319, 321 (1972); *Johnson v. California*, 207 F.3d 650, 655 (9th Cir. 2000). The discriminatory policy or practice will pass constitutional muster only if "reasonably related to legitimate penological interests." *See Johnson v. California*, 321 F.3d 791, 799-807 (9th Cir. 2003).

Plaintiff's allegations present a constitutionally cognizable equal protection claim.

### CONCLUSION

For the foregoing reasons, the Court orders as follows:

1. Plaintiff's implied motion for leave to file a SAC is GRANTED. The Clerk is directed to file the document labeled "First Amended Complaint," (dkt. 18), and docket it as Plaintiff's "Second Amended Complaint." The Clerk is further directed to mark the SAC as filed on March 21, 2014, the date it was received by the Court.

2. Plaintiff's allegations regarding placement and retention in administrative segregation in the SHU at PBSP when liberally construed, state cognizable claims under section 1983 for a denial of due process and for supervisory liability -- claims (1), (3) and (11) -- against the aforementioned PBSP and CDCR Defendants (hereinafter "Defendants").

3. Plaintiff's claims against the following named CSP officials are DISMISSED WITHOUT PREJUDICE: Warden Connie Gipson; CDWs R. Davis, K. Comaites and R. Lopez; Facility Captain R. Bloomfield; Correctional Counselors T. Cisneros, F. Chastain, E. E. Hough; Investigative Service Unit Investigative Captain R. Flores; IGI Officers J. Campbell and Mayo; and IGI Lieutenant C. Rodriguez.

4. Plaintiff's allegations present a constitutionally cognizable due process claim -- claim (6) -- based on a denial of his state-created liberty interest in parole.

5. Plaintiff's Eighth Amendment claims related to his alleged erroneous classification as a gang associate and placement in the SHU at PBSP and Defendants' failure to investigate his claim that he is not a prison gang associate -- claims (2) and (3) -- are DISMISSED without leave to amend.

6. Plaintiff states a cognizable Eighth Amendment claim -- claim (12) -- that the debriefing policy subjects him to cruel and unusual punishment in violation of the Eighth Amendment because it requires him to put himself, his families and friends at risk of physical attack in order to be released from the SHU.

7. Plaintiff's claim (5), which states that Defendants violated some provision in the settlement agreement in *Castillo v. Alameida*, N.D. Cal. No. 94-2847 MJJ, is DISMISSED for failure to state a claim for relief.

8. Plaintiff states a cognizable claim that the debriefing requirement violates his Fifth

11

Amendment right against self-incrimination - claim (4).

9. Plaintiff's claim (7), in which he contends that Defendants enforced vague and overbroad regulations (related to gang validation) is DISMISSED.

10. Plaintiff states a cognizable claim of a violation of his First Amendment right to association based on his allegation that he has been placed and held in the SHU based solely on his association with members of the EME Prison Gang - claim (8).

11. The Court will exercise supplemental jurisdiction over Plaintiff's state law claims - claims (9) and (10).

12. Plaintiff's allegations present a constitutionally cognizable equal protection claim - claim (13).

13. The Clerk of the Court shall mail a Notice of Lawsuit and Request for Waiver of Service of Summons, two copies of the Waiver of Service of Summons, a copy of the SAC and all attachments thereto (dkt. 18) and a copy of this Order to: (1) the following persons at PBSP: **Warden G. Lewis; Chief Deputy Warden P. T. Smith; Facility Captain K. Cruse; Sergeant R. Randow; IGI Sergeant A. B. Gomez; and Licensed Clinical Social Worker V. Cappello**; and (2) the following persons at CDCR in Sacramento: **Director Matthew Cate; Appeals Examiner K. J. Allen; Inmate Appeals Branch Chiefs R. Manuel and D. Foston; Special Services Unit Special Agents B. Kinroton, D. S. McClure, Buechner, Scott S. Kissel and C. M. Rojers.** The Clerk of the Court shall also mail a copy of the SAC and a copy of this Order to the California State Attorney General's Office**.** Additionally, the Clerk shall mail a copy of this Order to Plaintiff.

14. Defendants are cautioned that Rule 4 of the Federal Rules of Civil Procedure requires them to cooperate in saving unnecessary costs of service of the summons and complaint. Pursuant to Rule 4, if Defendants, after being notified of this action and asked by the Court, on behalf of Plaintiff, to waive service of the summons, fail to do so, they will be required to bear the cost of such service unless good cause be shown for their failure to sign and return the waiver form. If service is waived, this action will proceed as if Defendants had been served on the date that the waiver is filed, except that pursuant to Rule 12(a)(1)(B), Defendants will not be required to serve

1  and file an answer before **sixty (60) days** from the date on which the request for waiver was sent.
2  (This allows a longer time to respond than would be required if formal service of summons is
3  necessary.)  Defendants are asked to read the statement set forth at the foot of the waiver form that
4  more completely describes the duties of the parties with regard to waiver of service of the summons.
5  If service is waived after the date provided in the Notice but before Defendants have been
6  personally served, the Answer shall be due **sixty (60) days** from the date on which the request for
7  waiver was sent or **twenty (20) days** from the date the waiver form is filed, whichever is later.

8       15.    Defendants shall answer the SAC in accordance with the Federal Rules of Civil
9  Procedure.  The following briefing schedule shall govern dispositive motions in this action:

10      a.    No later than **sixty (60) days** from the date their answer is due, Defendants
11 shall file a motion for summary judgment or other dispositive motion.  The motion must be
12 supported by adequate factual documentation, must conform in all respects to Federal Rule of Civil
13 Procedure 56, and must include as exhibits all records and incident reports stemming from the
14 events at issue.  A motion for summary judgment also must be accompanied by a *Rand*[4] notice so
15 that Plaintiff will have fair, timely and adequate notice of what is required of him in order to oppose
16 the motion.  *Woods v. Carey*, 684 F.3d 934, 935 (9th Cir. 2012) (notice requirement set out in *Rand*
17 must be served concurrently with motion for summary judgment).  A motion to dismiss for failure to
18 exhaust available administrative remedies must be accompanied by a similar notice.  However, the
19 Court notes that under the *new* law of the circuit, in the rare event that a failure to exhaust is clear on
20 the face of the SAC, Defendants may move for dismissal under Rule 12(b)(6) as opposed to the
21 previous practice of moving under an unenumerated Rule 12(b) motion.  *Albino v. Baca*, 747 F.3d
22 1162, 1166 (9th Cir. 2014) (en banc) (overruling *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir.
23 2003), which held that failure to exhaust available administrative remedies under the Prison
24 Litigation Reform Act, 42 U.S.C. § 1997e(a) ("PLRA"), should be raised by a defendant as an
25 unenumerated Rule 12(b) motion).  Otherwise if a failure to exhaust is *not* clear on the face of the
26 SAC, Defendants must produce evidence proving failure to exhaust in a motion for summary

---

[4] *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998).

13

judgment under Rule 56. *Id.* If undisputed evidence viewed in the light most favorable to Plaintiff shows a failure to exhaust, Defendant are entitled to summary judgment under Rule 56. *Id.* But if material facts are disputed, summary judgment should be denied and the district judge rather than a jury should determine the facts in a preliminary proceeding. *Id.* at 1168.

If Defendants are of the opinion that this case cannot be resolved by summary judgment, they shall so inform the Court prior to the date the summary judgment motion is due. All papers filed with the Court shall be promptly served on Plaintiff.

      b.      Plaintiff's opposition to the dispositive motion shall be filed with the Court and served on Defendants no later than **twenty-eight (28) days** after the date on which Defendants' motion is filed.

      c.      Plaintiff is advised that a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure will, if granted, end your case. Rule 56 tells you what you must do in order to oppose a motion for summary judgment. Generally, summary judgment must be granted when there is no genuine issue of material fact -- that is, if there is no real dispute about any fact that would affect the result of your case, the party who asked for summary judgment is entitled to judgment as a matter of law, which will end your case. When a party you are suing makes a motion for summary judgment that is properly supported by declarations (or other sworn testimony), you cannot simply rely on what your SAC says. Instead, you must set out specific facts in declarations, depositions, answers to interrogatories, or authenticated documents, as provided in Rule 56(e), that contradicts the facts shown in the defendant's declarations and documents and show that there is a genuine issue of material fact for trial. If you do not submit your own evidence in opposition, summary judgment, if appropriate, may be entered against you. If summary judgment is granted, your case will be dismissed and there will be no trial. *Rand*, 154 F.3d at 962-63.

Plaintiff also is advised that -- in the rare event that Defendants argue that the failure to exhaust is clear on the face of the SAC -- a motion to dismiss for failure to exhaust available administrative remedies under 42 U.S.C. § 1997e(a) will, if granted, end your case, albeit without prejudice. To avoid dismissal, you have the right to present any evidence to show that you did exhaust your available administrative remedies before coming to federal court. Such evidence may

14

include: (1) declarations, which are statements signed under penalty of perjury by you or others who have personal knowledge of relevant matters; (2) authenticated documents -- documents accompanied by a declaration showing where they came from and why they are authentic, or other sworn papers such as answers to interrogatories or depositions; (3) statements in your SAC insofar as they were made under penalty of perjury and they show that you have personal knowledge of the matters state therein. As mentioned above, in considering a motion to dismiss for failure to exhaust under Rule 12(b)(6) or failure to exhaust in a summary judgment motion under Rule 56, the district judge may hold a preliminary proceeding and decide disputed issues of fact with regard to this portion of the case. *Albino*, 747 F.3d at 1168.

(The notices above do not excuse Defendants' obligation to serve similar notices again concurrently with motions to dismiss for failure to exhaust available administrative remedies and motions for summary judgment. *Woods*, 684 F.3d at 935.)

        d.        Defendants shall file a reply brief no later than **fourteen (14) days** after the date Plaintiff's opposition is filed.

        e.        The motion shall be deemed submitted as of the date the reply brief is due. No hearing will be held on the motion unless the Court so orders at a later date.

16. Discovery may be taken in this action in accordance with the Federal Rules of Civil Procedure. Leave of the Court pursuant to Rule 30(a)(2) is hereby granted to Defendants to depose Plaintiff and any other necessary witnesses confined in prison.

17. All communications by Plaintiff with the Court must be served on Defendants or their counsel, once counsel has been designated, by mailing a true copy of the document to them.

18. It is Plaintiff's responsibility to prosecute this case. Plaintiff must keep the Court informed of any change of address and must comply with the Court's orders in a timely fashion. Pursuant to Northern District Local Rule 3-11 a party proceeding pro se whose address changes while an action is pending must promptly file a notice of change of address specifying the new address. See L.R. 3-11(a). The Court may dismiss without prejudice a complaint when: (1) mail directed to the pro se party by the Court has been returned to the Court as not deliverable, and (2) the Court fails to receive within sixty days of this return a written communication from the pro

se party indicating a current address. See L.R. 3-11(b).

19. Extensions of time are not favored, though reasonable extensions will be granted. Any motion for an extension of time must be filed no later than **fourteen (14) days** prior to the deadline sought to be extended.

20. Because Plaintiff has been previously granted leave to proceed IFP, he may rely on the officers of the Court for service. 28 U.S.C. § 1915(d); Fed. R. Civ. P. 4(c)(2). Therefore, the Court DENIES as unnecessary Plaintiff's two motions for an extension of time to serve Defendants. Dkt. 19, 20.

21. This Order terminates Docket Nos. 19 and 20.

IT IS SO ORDERED.

DATED: June 30, 2014

**Y**VONNE **G**ONZALEZ **R**OGERS
**U**NITED **S**TATES **D**ISTRICT **C**OURT **J**UDGE

P:\PRO-SE\YGR\CR.13\Carranza3337.service.wpd          16